UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                     :

SHELDON L. SUSSMAN,                           :

                             Plaintiff,              :
                                                     :       09 Civ. 8065 (SHS)
           -against-                    :
                                                     :       <u>OPINION & ORDER</u>

RABOBANK INTERNATIONAL,          :

                           Defendant.           :

------------------------------------------------------------------x
SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Sheldon Sussman brings this action pursuant to section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and for breach of contract and conversion. Sussman alleges that his former employer, Rabobank International, owes him $833,208.76 in benefits that he earned under the terms of the Rabobank International Bonus Deferral Plan. Rabobank responds that Sussman explicitly waived his right to these benefits in the separation agreement he signed upon leaving the employ of Rabobank in 2008. Rabobank moved for judgment on the pleadings, or alternatively, for summary judgment, and Sussman has now cross-moved for summary judgment. Because this Court finds that Sussman waived his right to the relevant benefits before they vested, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

**I.      BACKGROUND**

      The following facts are undisputed, unless otherwise noted.

      A.      <u>The Parties' Employment Relationship</u>

      Sussman began working for Rabobank in 1998 and served as its Head of Global Financial Markets until his termination on March 10, 2008. (Def.'s Local Civil Rule 56.1 Statement of

1

Undisputed Facts ("Def.'s 56.1") ¶ 1; Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 1.)

      B.      <u>The Bonus Deferral Plan</u>

Sussman was a participant in the Rabobank International Bonus Deferral Plan (the "Plan"). (Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.) As a Plan participant, he had his annual bonus compensation placed in a segregated fund, known as a Rabbi Trust. (Def.'s 56.1 ¶¶ 3, 9; Pl.'s 56.1 ¶¶ 3, 9.) According to the Plan's vesting schedule, 50% of the deferred benefits would vest after one year of "Vesting Service" and the remaining 50% would vest after the second year of "Vesting Service." (*See* Plan § 3.02, Ex. A to Compl.) Plan participants receive "Vesting Service" credit as long as they are "employed [by Rabobank] at all times during a Plan Year"-- which is defined as the 12-month period beginning on March 1 of each calendar year. (*Id.*) In addition, the Plan provides special vesting conditions in connection with the termination of employment. (*Id.*)

In March 2007, Sussman earned a bonus award of $1,524,246, which was deferred pursuant to the Plan. (Def.'s 56.1 ¶ 15; Pl.'s 56.1 ¶ 15.) After one year of Vesting Service, Sussman received 50% of this bonus award in the amount of $762,123. (Def.'s 56.1 ¶ 16; Pl.'s 56.1 ¶ 16.) The remaining 50% of the bonus award—the second tranche ("Second Tranche")— was scheduled to vest one year later, in March 2009, pursuant to section 3.02 of the Plan. (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 17.)

      C.      <u>Plaintiff's Termination and the Separation Agreement</u>

Rabobank gave Sussman notice on March 10, 2008 that he was being terminated, without cause, effective September 10, 2008. (Def.'s 56.1 ¶ 18; Def.'s Local Civil Rule 56.1 Counterstatement of Material Facts ¶ 71; Pl.'s 56.1 ¶¶ 18, 71.) Sussman continued to draw his

normal salary until his termination became effective on September 10, 2008; and with the assistance of his attorney, Jonathan Sack, Esq., Sussman negotiated a Separation Agreement, dated August 13, 2008.  (Def.'s 56.1 ¶ 23, 61; Pl.'s 56.1 ¶ 23, 61; Separation Agreement, Ex. C to Compl. ("Sep. Agmt.") ¶ 1.)  Sussman signed the Separation Agreement with Rabobank on September 2, 2008.  (Def.'s 56.1 ¶ 59; Pl.'s 56.1 ¶ 59.)  The Separation Agreement provides a $4.9 million lump-sum payment to Sussman in consideration of his "covenants and obligations under this Agreement."  (Def.'s 56.1 ¶ 61; Pl.'s 56.1 ¶ 61; Sep. Agmt. ¶ 2.)  The Separation Agreement also contains a broad release and waiver of claims against Rabobank, with a carve-out to the release and waiver for "benefits vested as of the Termination Date [defined as March 10, 2008] under any of the Bank's retirement plans."  (Sep. Agmt. ¶ 6.)

      D.      This Action

Following Sussman's execution of the Separation Agreement, Rabobank allegedly "without authority liquidated" the Second Tranche.  (Compl. ¶ 34.)  Sussman claims that when he learned of this liquidation, he demanded payment from Rabobank.  (Compl. ¶ 38.)  Counsel for Rabobank directed him to bring his claim to the Plan administrator, and Sussman made a written application for $769,164 on February 20, 2009.  (Compl. ¶ 41.)  Andrew Druch, Rabobank's general counsel, responded that, by signing the Separation Agreement, Sussman had released Rabobank of all claims, including those to the Second Tranche.  (Compl. ¶ 42.)  Druch informed Sussman that he no longer had any rights under the Plan.  (Compl. ¶ 44).  Sussman claims that he filed a timely administrative appeal challenging that determination and has exhausted his administrative remedies.  (Compl. ¶ 48.)

Sussman alleges that the accrued balance of his fully vested deferred compensation was $833,208.76 as of the date of his final pay stub on September 15, 2008.  (Compl. ¶ 46.)  He asks

the Court to direct Rabobank to pay his benefits pursuant to ERISA. In the alternative, Sussman asks the Court to order the same relief based on a breach of contract or conversion.

## II. DISCUSSION

### A. Summary Judgment Standard

Both parties have fully briefed cross-motions for summary judgment. Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The same standard applies where the parties file cross-motions for summary judgment, and "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001; *S.E.C. v. Lyon*, 605 F.Supp.2d 531, 540 (S.D.N.Y. 2009).

### B. Contract Interpretation

This dispute centers on how two separate documents—the Plan and the Separation Agreement—should be construed. Sussman claims that upon his termination in March 2008, his bonus award became 100% vested pursuant to section 3.02 of the Plan and that the Separation Agreement preserved his right to the vested Second Tranche. Rabobank contends that the

Second Tranche remained unvested at the time Sussman signed the Separation Agreement, in which he expressly waived his right to the Second Tranche.  At issue, therefore, is (1) whether the Second Tranche vested pursuant to the Plan upon Sussman's termination and (2) whether Sussman waived his right to the Second Tranche in signing the Separation Agreement.

"In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use. . . . When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity. . . . The language of a contract is not made ambiguous simply because the parties urge different interpretations."  *Seiden Assocs., Inc. v. ANC Holdings, Inc*. 959 F.2d 425, 428 (2d Cir. 1992) (citations omitted).

### 1.    *Sussman's Benefits Did Not Vest Upon His Termination*

The Plan provides a two-year vesting schedule for employees who remain employed by Rabobank at all times during this two-year period.  (*See* Plan § 3.02.)    However, the Plan also specifies that:

> a Participant shall become 100% vested  . . . if: (a) he/she has been employed by the Employer continuously for a period of five (5) years at the time of his/her Termination of Employment, provided that (1) the Termination of Employment is for reasons other than Cause and (2) the Participant does not commence employment with a competitor of the Employer . . . prior to the time that the Participant would otherwise have become vested in the subaccount had he/she not incurred a Termination of Employment."

(*Id.*)  Thus, Plan participants may still become 100% vested even if they do not remain employed by Rabobank for the full the two-year vesting period, so long as certain conditions are met.  (*Id.*)

Sussman contends that this provision creates an exception to the normal vesting schedule. He argues that because (1) he was employed by Rabobank "continuously for a period of five (5) years" at the time of his termination, (2) he was terminated "for reasons other than Cause", and (3) he did not "commence employment with a competitor . . . prior to the time [he] would

otherwise have become vested" (i.e., March 2009), he therefore became 100% vested *upon his termination* pursuant to the language in section 3.02 cited above.  However, this position is based on a misreading of the Plan's plain language.

Specifically, section 3.02 of the Plan does not accelerate vesting for terminated participants.  Rather, section 3.02 allows certain participants who are terminated prior to their vesting date to have their benefits continue to vest even though they no longer work for the company.  The final date on which the benefits become fully vested does not change.  Indeed, it is impossible to know at the time of termination whether an unvested participant will ultimately meet the last condition of section 3.02, namely, whether or not he will commence employment with a competitor "prior to *the time that the Participant would otherwise have become vested . . . .*"  (*Id.* (emphasis added)).

In other words, assuming, *arguendo*, that Sussman had in fact satisfied all three conditions, the Second Tranche would not have vested until March 2009.  (*Id.*)  The Second Tranche did not vest upon Sussman's notice of termination in March 2008 or upon the effective date of his termination in September 2008.  (*Id.*)

2.   *Sussman Waived His Right to the Second Tranche*

Accordingly, when Sussman signed the Separation Agreement in September 2008, the Second Tranche had not yet vested.  In that Agreement, Sussman agreed to "release and forever discharge the Bank . . . from any and all claims, causes of action, obligations, demands and liabilities whatsoever . . . arising from any matter or thing that has happened, developed or occurred before [his] execution of this Agreement."  (Sep. Agmt. ¶ 6.)  The waiver specifically covers any claims "arising from or in connection with the Rabobank International Bonus Deferral Plan (restated, effective January 1, 2000) (including but not limited to any claim for

deferred compensation that had not yet vested as of the date of [Sussman's] execution of this Agreement)."  (*Id.*)  Moreover, the Separation Agreement includes an express waiver of claims "arising under or in connection with ERISA" and goes on to state that "[t]his General Release and Waiver covers any and all claims based on theories of contract or tort." (*Id.*)

Sussman's contention that he did not waive his right to the Second Tranche relies on a carve-out provision within the waiver.  According to that provision, "[n]otwithstanding the foregoing, it is understood that this General Release and Waiver does not affect any of [Sussman's] benefits *vested* as of the Termination Date [March 10, 2008] under any of the Bank's retirement plans."  (*Id.* (emphasis added)).  Sussman maintains that this carve-out provision applies to the Second Tranche.  However, for the reasons set forth above, the Second Tranche had not yet vested as of March 10, 2008.  Thus, the carve-out provision for benefits vested under Rabobank's retirement plans does not apply to the unvested Second Tranche of the Bonus Award.

Neither party claims that the waiver is unenforceable.  It is undisputed that throughout the negotiation process, Sussman was represented by counsel.  A sophisticated businessman himself, Sussman had three weeks to review the Separation Agreement before he signed it.  If Sussman intended to preserve his right to the Second Tranche, he could—and should—have done so.  But instead he explicitly forfeited this right, *inter alia*, in exchange for a payment of $4.9 million.  (*Id.* at ¶¶ 2, 6).  *See Coviello v. Ret. Plan for Empls. of Nat'l Cleaning Contractors, Inc.*, No. 92 Civ. 7139, 1993 WL 177814, at *1 (S.D.N.Y. May 17, 1993) ("Since ERISA only protects from forfeiture those pension benefits which have vested, . . . there are no statutory bars to the effectiveness of the waiver contained in the separation agreement.") (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1980)); *Skluth v. United Merchants & Mfrs., Inc.*, 163

7

A.D.2d 104, 106, 559 N.Y.S.2d 280 (N.Y. App. Div. 1990) ("It is firmly established that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties.") (citation omitted).

Sussman's knowing and voluntary waiver in the Separation Agreement extinguished any right he may have had to the Second Tranche of the Bonus Award. (Sep. Agmt. ¶ 6.) Sussman did not have any legal ownership or right to the Second Tranche when Rabobank allegedly liquidated the funds following Sussman's execution of the Separation Agreement. Because Sussman clearly and unambiguously waived any claims related to the Plan—as well as claims arising under or in connection with ERISA, or based on theories of contract or tort—he is not entitled to the Second Tranche.

### III. CONCLUSION

This Court finds that, based on the plain language of the Plan and the Separation Agreement, Sussman waived his right to the unvested Second Tranche of the Bonus Award. Plaintiff has failed to raise a genuine issue of any material fact that supports a finding of an ERISA violation, breach of contract, or conversion. Thus, Rabobank's motion for summary judgment in its favor dismissing plaintiff's complaint is granted. Sussman's cross-motion for summary judgment is denied.

Dated: New York, New York
      September 16, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

8